2022 IL App (1st) 200495-U

No. 1-20-0495

Order filed June 15, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| DANIEL and CORNELIA CUSNIRIUC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17CH6904 |
| | ) | |
| GHERASIM (SAM) STOIA and LIDIA STOIA, | ) | Honorable |
| | ) | Sanjay Tailor, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court over defendants' contentions that the court erred in entering a declaratory judgment finding that plaintiffs had an implied easement by preexisting use to install and access their mechanical equipment in the basement of defendants' condominium unit. We further find that the court did not err in awarding plaintiffs punitive damages and attorney fees where defendants' tortious conduct was willful and wanton.

¶ 2    This appeal arises following the circuit court's entry of a declaratory judgment and permanent injunction finding that plaintiffs Daniel and Cornelia Cusniriuc, as the owners of a condominium unit, had an implied easement by preexisting use to install and access their

mechanical equipment in the basement of the condominium unit owned by defendants Gherasim Stoia and Lidia Stoia (Lidia). The parties share a two-unit condominium building. Plaintiffs' condominium consists of the second floor, and defendants' condominium consists of the first floor and basement. The mechanical equipment for the second floor condominium unit, including the furnace, hot water heater, and electrical panel, had been located in the basement of defendants' condominium unit for more than 15 years.

¶ 3    When plaintiffs moved into the second floor condominium unit, defendants requested that plaintiffs remove their mechanical equipment from the basement. When plaintiffs refused, defendants removed the equipment themselves. Plaintiffs filed suit, contending that they had an implied easement by preexisting use to house and access their mechanical equipment in the basement. Following several hearings, but no trial, the circuit court found in favor of plaintiffs, entering a declaratory judgment that plaintiffs had an easement to install their mechanical equipment in the basement and granted them reasonable access to service and repair their equipment there. The court also entered a permanent injunction enjoining defendants from interfering with plaintiffs' mechanical equipment or their access to it.

¶ 4    On appeal, defendants contend that the court erred in entering a declaratory judgment finding an easement where there is no precedent for an easement that exists within the interior living space of another property owner's home. Defendants further assert that the court erred in finding an easement because the parties did not intend to create an easement and there was no necessity for an easement because the mechanical equipment can be relocated. Defendants further contend that the court erred in striking certain evidence, and that the court erred in awarding plaintiffs punitive damages and attorney fees. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                        I. BACKGROUND

¶ 6        In 1998, George (George) and Agatha (Agatha) Ardelean purchased a two-story building located in Lincolnwood, Illinois. Defendant Lidia is George's sister. In May 2000, the Ardeleans divided the building into two separate condominium units. The first unit consisted of the first floor and the basement ("Unit One"). The second unit consisted of the second floor ("Unit Two"). The mechanical equipment for Unit Two, including the furnace, hot water heater, and electrical panel were located in the basement of Unit One. Shortly after dividing the building, the Ardeleans sold Unit One to defendants and George and Lidia's parents moved into Unit Two. George and Agatha retained ownership of Unit Two, but George and Lidia's parents occupied the unit. After George and Lidia's parents passed away, George and Agatha sold Unit Two to plaintiffs in 2016.

¶ 7        After plaintiffs moved into the building, defendants asked plaintiffs to remove their mechanical equipment from the basement. Plaintiffs responded to defendants through an attorney who indicated that because the mechanical equipment had been located in the basement for many years, plaintiffs had an implied easement to access the basement and the mechanicals located therein. Defendants responded with a demand letter sent from an attorney demanding that the plaintiffs remove their mechanical equipment from the basement. In May 2017, the Second Unit mechanical equipment was removed from the basement and placed in the stairwell of the building.

¶ 8        On May 16, 2017, plaintiffs filed an emergency petition for a temporary restraining order and preliminary injunction, and a complaint for declaration of an implied easement, injunctive relief, and other relief. In their petition and complaint, plaintiffs alleged that the mechanical equipment for Unit Two had been in the basement of Unit One for more than 17 years and was necessary to serve plaintiffs' condominium unit. Plaintiffs alleged that defendants forcibly removed plaintiffs' mechanical equipment from the basement, leaving their condominium unit

uninhabitable because of the lack of electricity, heat, air conditioning, and hot water. Plaintiffs sought a judgment from the court declaring that they had an implied easement to store and access their mechanical equipment in the basement on Unit One, an injunction requiring defendants to repair, replace, and reinstall the removed equipment, and money damages. Plaintiffs also sought an injunction prohibiting defendants from interfering with plaintiffs' mechanical equipment in the basement. Plaintiffs attached to their petition an affidavit from George who stated that the mechanical equipment for the second floor had been in the basement since he purchased the building in 1998, and that the mechanical equipment was necessary for the beneficial enjoyment of Unit Two.

¶ 9      In the complaint filed with their petition, plaintiffs raised four counts. In their first count, plaintiffs sought a declaratory judgment declaring the existence of an implied easement for the benefit of Unit Two to the basement of Unit One for the purpose of housing their mechanical equipment with necessary access. Plaintiffs asserted that there existed an implied easement from preexisting use. Plaintiffs contended that from the time the Ardeleans purchased the property in 1998, the mechanicals for the second floor were located in the basement. When the Ardeleans divided the property and sold Unit One to defendants, the second floor mechanicals remained in the basement. Plaintiffs maintained that the Unit Two mechanicals had been in the basement without incident for nearly 20 years, and were necessary to the use and enjoyment of Unit Two.

¶ 10     Plaintiffs' second count was an action for a mandatory injunction. Plaintiffs contended that as the owners of Unit Two, they had an implied enforceable easement upon the basement of defendants' property to store, operate, and access their mechanical equipment. Plaintiffs asserted that defendants wrongfully interfered with their use of Unit Two when defendants removed the mechanical equipment from the basement, leaving plaintiffs without electricity, heat, air

conditioning, and hot water. Plaintiffs maintained that they were entitled to a mandatory injunction requiring defendants to replace and repair the removed mechanicals. Plaintiffs also sought in Count III a permanent injunction to prevent defendants from interfering with plaintiffs' use, access, and operation of the mechanical equipment in the basement.

¶ 11    Finally, in Count IV, plaintiffs raised a claim for trespass to chattels alleging that defendants intentionally and wrongfully removed plaintiffs' mechanical equipment from the basement. Plaintiffs alleged that they sustained damages based on defendants' wrongful removal of the mechanical equipment. Plaintiffs sought punitive damages "in excess of $50,000 by reason of the defendants' intentional trespass to plaintiffs' property."

¶ 12    The circuit court entered a temporary restraining order on May 17, 2017, finding that plaintiffs "have raised a fair question as to their likelihood of success on the merits of their claim for enforcement of their implied easement for placement and operation of their equipment located in defendants' basement." The court therefore commanded defendants to allow plaintiffs and their contractors to enter the basement for the purpose of reinstalling the removed mechanical equipment.

¶ 13    On July 10, 2017, defendants filed an answer to plaintiffs' complaint and a counterclaim. Defendants contended that until plaintiffs moved into Unit Two, defendants' family members lived in Unit Two. Defendants contended that, during that time, the property "essentially functioned as a family home." Defendants asserted that they allowed the mechanical equipment for Unit Two to remain in their basement as a "courtesy" to their family members, but never intended or agreed to grant an easement to the owner of Unit Two. Defendants sought a declaratory judgment that plaintiffs had no easement across Unit One. Defendants also raised a claim for quiet title, ejectment, breach of covenant, and damages.

¶ 14 The record reflects that a hearing took place on November 16, 2017. Defendants represent that they both testified at the hearing and the sole issue was whether plaintiffs had an implied easement to access their mechanical equipment in the basement. We observe, however, that there is no report of proceedings from this hearing included in the record filed on appeal.

¶ 15 Following the hearing, the court entered an order instructing plaintiffs to file a memorandum on the issues explored at the hearing, including their claim for declaratory judgment for an implied easement. The court also ordered defendants to file a response to plaintiffs' memorandum.

¶ 16 In their memorandum, plaintiffs repeated the claims in their complaint that they had an implied easement to place and to access the mechanical equipment for Unit Two in the basement of Unit One. The court held another hearing and subsequently ordered the parties to prepare supplemental memorandum addressing the appellate court's decision in *Madden v. Scott*, 2017 IL App (1st) 162149.

¶ 17 Following the submission of the parties' supplemental memoranda, the court entered a preliminary injunction in favor of plaintiffs and against defendants enjoining defendants from "interfering with the plaintiffs' enjoyment of an implied easement to locate and access their mechanicals in the basement area of the defendant's [*sic*] condominium unit."

¶ 18 After the parties' attempts at a settlement failed, the court ordered the parties to file trial briefs on all issues. In the order setting the briefing schedule, the court stated that the "parties stipulate that the existing evidentiary record is complete and will be the basis for final determination in the case."

¶ 19 After further pleadings and hearings, the court ordered the parties to file another set of supplemental briefs addressing the issue of whether an implied easement could apply to an "interior space."

¶ 20 Plaintiffs, in their brief, stated that they could not locate any case which discussed whether an easement by preexisting use could be imposed over the interior living space of another property owner's condominium unit. Plaintiffs contended, however, that where the elements of an implied easement are present, the court should impose the easement regardless of where the easement is located. In response, defendants contended that the court could not impose an easement within the interior living space of a condominium unit where there were reasonable alternatives. Defendants maintained that the mechanicals were not permanent fixtures and could be relocated to a portion of the building outside of defendants' unit.

¶ 21 The record suggests that a hearing took place on November 4, 2019, but there is no report of proceedings from such a hearing in the record.

¶ 22 That same day, the court entered its written judgment. The court found that plaintiffs were entitled to an easement by preexisting use over a portion of defendant's condominium unit to access and locate their mechanical equipment. The court found that plaintiffs proved by a preponderance of the evidence the three essential elements for the creation of an easement by preexisting use:

> "(i) common ownership of the claimed dominant and servient parcels and a subsequent conveyance or transfer separating that ownership[]; (ii) before severance, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent; and (iii) the claimed easement is beneficial to the enjoyment of the parcel conveyed by the grantor."

The court further found that it was reasonable and equitable to limit plaintiffs' easement by area, time, necessity, and notice restrictions.

¶ 23    The court also found that when defendants removed plaintiffs' mechanicals from the basement in May 2017, they committed the tort of trespass to chattels. The court determined that plaintiffs were injured by defendants' actions.

¶ 24    The court therefore entered a declaratory judgment in favor of plaintiffs and against defendants finding that plaintiffs, as owners and occupiers of Unit Two, had an implied easement by preexisting use to locate, access, and service their mechanicals in the basement of Unit One. The court also entered a permanent injunction prohibiting defendants from interfering with plaintiffs' mechanical equipment or plaintiffs' access to the mechanical equipment. The court awarded plaintiffs punitive damages of $2,500 on their claim for trespass to chattels, and entered an award of attorney fees to be established by a supplemental petition.

¶ 25    Plaintiffs subsequently filed a petition and affidavit for attorney fees and costs. The court held a hearing on plaintiffs' petition where it heard argument from the parties' counsels only; however, there is no transcript from this hearing in the record filed on appeal. The court entered an order finding that plaintiffs were entitled to attorney fees and costs "as an additional award for punitive damages based on the court's finding that the defendants' intentionally removed the plaintiffs' mechanicals from the basement." The court granted plaintiffs' fee petition in the amount of $19,500 in attorney fees and $411 in costs. The court also entered a Supreme Court Rule 304(a) (eff. Mar. 18, 2016) finding, stating that this was a final and appealable order and that all prior orders in this matter were appealable.[1] Defendants now appeal.

---

[1]The court subsequently entered an order transferring the matter to the law division finding that the remaining cause of action concerned only money damages.

¶ 26                                    II. ANALYSIS

¶ 27    On appeal, defendants raise a number of contentions based on the circuit court's ruling. Defendants first contend that the court erred in entering a declaratory judgment finding that plaintiffs had an easement by preexisting use to install and access their mechanical equipment in the interior living space of defendants' condominium unit. Defendants also assert that the court erred in granting plaintiffs' motion to strike certain evidence, including an affidavit from Lidia. Defendants next contend that the court erred in awarding plaintiffs punitive damages of $2,500 on their claim for trespass to chattels. Finally, defendants maintain that the court erred in awarding plaintiffs attorney fees as an additional award of punitive damages.

¶ 28                              A. Appellants' Brief Only

¶ 29    We first observe that plaintiffs have not filed an appellee brief. However, we may reach the merits of an appeal even in the absence of an appellee brief where, as here, the record is simple and the claimed errors are such that this court can easily decide them without the aid of an appellee brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 30                         B. Implied Easement by Preexisting Use

¶ 31    Defendants first contend that the court erred in entering a declaratory judgment finding that plaintiffs had an implied easement within the interior living space of defendants' condominium unit. Defendants maintain that Illinois law does not permit a property owner to have an easement within the interior living space of another property owner's home. Defendants further contend that the parties did not intend to create an easement and there is no necessity for an easement in this case. Defendants maintain that the mechanical equipment is not permanent in nature and can be relocated.

¶ 32 An easement is " 'a right or a privilege in the real estate of another [citation].' " *McDermott v. Metropolitan Sanitary District*, 240 Ill. App. 3d 1, 20 (1992). An easement may be created by an express grant that determines the extent of the easement (*Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 101 (2004)) or easements may be implied based on the intention of the parties to the conveyance (*Emanuel v. Hernandez*, 313 Ill. App. 3d 192, 196 (2000)). Implied easements may either be easements by necessity or easements from a preexisting use. *Granite Properties Limited Partnership v. Manns*, 117 Ill. 2d 425, 435 (1987). Our supreme court has explained:

> "The doctrine of implied easements is based upon the principle that, in the absence of an expressed contrary agreement, a conveyance imparts a grant of property with all the benefits and burdens which existed at time of sale, and it is designed to give effect to the actual intent of the parties as shown by the facts and circumstances of a particular case. [Citations.] It is generally held where the owner of a single tract has arranged or adapted it so that one portion thereof derives a benefit from the other of an apparent and continuous character, and then sells one of such parts without mention being made of these incidental uses, the grantee takes his property with all the rights and obligations which formerly existed. [Citations.] It is not required that the alleged easement be essential to the enjoyment of the claimants' property but it is sufficient if it would be highly convenient and beneficial thereto. [Citations.] The word 'apparent' as used in this connection does not necessarily mean notorious visibility, * * * but refers rather to a use which is either known or could have been discovered upon reasonable inspection. [Citations.]." *Frantz v. Collins*, 21 Ill. 2d 446, 449-50 (1961).

¶ 33 Here, the circuit court found that plaintiffs had an implied easement by preexisting use to place and access their mechanical equipment in the basement of defendants' condominium unit.

An easement implied from a preexisting use requires the plaintiff to prove three distinct elements: (1) common ownership of the claimed dominant and servient parcels and a subsequent conveyance or transfer separating that ownership; (2) before the conveyance or transfer severing the unity of title, the common owner used part of the united parcel for the benefit of another part, and this use was apparent and obvious, continuous, and permanent; and (3) the claimed easement is necessary and beneficial to the enjoyment of the parcel conveyed or retained by the grantor or transferrer. *Granite Properties Ltd.*, 117 Ill. 2d at 437. Here, the court found that plaintiffs satisfied all three elements where the original property was owned in common ownership by the Ardeleans, the Ardeleans stored the mechanical equipment for the second floor in the basement in an apparent, continuous, and obvious manner prior to the conveyance or transfer severing the unity of title, and the claimed easement is necessary and beneficial to the enjoyment of Unit Two.

¶ 34 Defendants contend that this finding was in error because the parties did not intend to create an easement, the easement is not necessary because the mechanical equipment does not have to be placed in the basement and is not permanent, and because the easement is through an interior living space of defendants' home, rather than outside the unit.

¶ 35 Despite defendants' contentions to the contrary, plaintiffs presented sufficient evidence to establish an implied easement by preexisting use in this case. First, when the Ardeleans owned the property and separated it into two condominium units, the mechanical equipment for Unit Two was in the basement of Unit One. When they sold Unit One to defendants and George and Lidia's parents moved into Unit Two, the mechanical equipment for Unit Two remained in the basement of Unit One. The mechanical equipment remained in defendants' basement for more than 15 years after they purchased Unit One. This demonstrated the Ardeleans' intention, as the owners, to have

Unit Two derive a benefit from Unit One by housing Unit Two's mechanical equipment in the basement of Unit One. As our supreme court has explained:

> "[W]here an owner of a tract of land or of two or more adjoining parcels uses it so that a part derives an advantage from the other part, which benefit or advantage appears to be of a continuous and permanent nature, and then such owner sells the part in favor of which the use is made, the purchaser, in addition to the title conveyed, receives the advantage or benefit by implication. If the part conveyed is burdened with an advantage or use for the benefit of another part, then the purchaser of the part so conveyed takes title subject to the burden by implication." *Leitch v. Hine*, 393 Ill. 211 225-26 (1946).

Indeed, George submitted an affidavit, which plaintiffs attached their complaint. In the affidavit, George stated that since the Ardeleans purchased the property in 1998, the mechanical equipment for the second floor had been located in the basement. He further stated that "at all time [*sic*] pertinent since we purchased the property in 1998, the occupants of the second floor had ready access" to their mechanical equipment located in the basement of Unit One. George represented that the mechanicals were "fixtures to the Property for benefit of the owners and occupants" of Unit Two. George further stated that before the property was separated into two condominiums "the Ardeleans, as the common owner of the entire Property, used the [Unit Two] Mechanicals in the Basement for the benefit of [Unit Two], and that use was apparent obvious, continuous, and permanent." George concluded that plaintiffs' easement to the basement was "necessary and beneficial to the enjoyment of the [Unit Two] owner/occupants." Thus, the Ardeleans' intention, as the owner, was clearly that the owners of Unit Two would have an easement to the basement to store and access their mechanical equipment. That intention was clear at the time of the conveyance.

¶ 36    We believe that it is immaterial that the easement in this case exists inside the interior living space of defendants' condominium unit. We find this court's reasoning in *Madden* instructive. In that case, which the circuit court here ordered the parties to specifically address in supplemental briefing, the plaintiffs and defendants lived in adjacent condominium units in the same multifamily building. *Id.* ¶¶ 3, 8. The plaintiffs owned Unit 60 and the defendants owned Unit 50. *Id.* ¶¶ 8-9. In order to access Unit 60, the plaintiffs would enter through a sliding glass door, cross over a vestibule, and enter the front door of the unit. *Id.* Shortly after purchasing Unit 50, the defendants informed the plaintiffs that they owned the " 'lion's share' " of the vestibule. *Id.* ¶ 10. Nonetheless, the plaintiffs continued to enter their unit through the vestibule. *Id.* Three years later, the defendants obtained a permit to build a wall in the vestibule. *Id.* ¶ 11. The plaintiffs filed suit asserting claims of an express easement, an implied easement, and a prescriptive easement within the boundaries of Unit 50 for the purposes of ingress and egress to and from Unit 60. *Id.* Following a bench trial, the trial court rejected the plaintiffs' claims of an express easement over the vestibule, but found in the plaintiffs' favor on their claims of an implied easement and an easement by prescription. *Id.* ¶ 14.

¶ 37    On appeal, the defendants contended, *inter alia*, that the trial court erred in finding an implied easement because there was no use of that portion of the vestibule lying within the boundaries of Unit 50 before the ownership of units 50 and 60 was severed. *Id.* ¶ 18. The defendants also asserted that an implied easement over the vestibule was not necessary to the beneficial enjoyment of Unit 60 because there were other means of ingress and egress to and from the unit. *Id.* The record showed that there were several other doors the plaintiffs could use to access the unit, but the plaintiffs could only reach the front door of their unit through the vestibule. *Id.* ¶ 4.

¶ 38    In rejecting the defendants' claims, this court found that there was a unity of ownership, and that the only avenue of access to the front door of Unit 60 was through the vestibule. *Id.* ¶ 20. The court found that "Unit 60 derived a benefit from access to its front door over that portion of the vestibule located within the boundaries of Unit 50." *Id.* The court recognized that access to Unit 60 through the vestibule was not "essential" to the use of the unit because of the existence of other means of entry and exit to the unit, but the court found that access through the vestibule was "beneficial to the enjoyment of Unit 60." *Id.* The court also noted that the use of the vestibule to access Unit 60 was obvious to any owner of Unit 50. *Id.* The court therefore found that the evidence supported the trial court's finding that the plaintiffs satisfied each of the elements necessary for the establishment of an implied easement over the portion of Unit 50 located within the vestibule. *Id.*

¶ 39    The court also addressed the defendants' contention that there was no precedent for granting an easement of any kind over the "interior living space of a condominium unit." *Id.* ¶ 31. The court rejected this argument for two reasons. First, the court found that even though the vestibule was located within the *boundaries* of Unit 50, it was located outside the living space of Unit 50. *Id.* "Second, although the easement in this case is over a portion of a condominium unit, it is nonetheless an easement over real property, and we find no reason to deviate from the traditional requirements for the establishment of easements over any other form of real property." *Id.*

¶ 40    Here, unlike the easement in *Madden*, the easement in this case is located within the living space of defendants' condominium unit. However, the second point in *Madden* still applies. The easement here is still an easement over real property. We likewise find no reason to deviate from

"the traditional requirements for the establishment of easements over any other form of real property." *Id.*

¶ 41    We also reject defendants' contention that the circuit court erred in finding an implied easement because it is not necessary for the mechanical equipment to be stored in the basement. Defendants maintain that there are reasonable alternatives such as moving the mechanical equipment to plaintiffs' unit. However, as the court recognized in *Madden*, an implied easement can be established even when its existence is not strictly necessary if it is "beneficial to the enjoyment" of the real property. *Id.* ¶ 20. In so finding, the *Madden* court relied on our supreme court's holding in *Frantz*, 21 Ill. 2d at 449-50. In *Frantz*, the supreme court stated: "It is not required that the alleged easement be essential to the enjoyment of the claimants' property but it is *sufficient if it would be highly convenient and beneficial thereto*." (Emphasis added.) *Id.* at 450. Here, the placement and access to the mechanical equipment for Unit Two in the basement of Unit One is "highly convenient" and "beneficial" to the owners of Unit Two, even if it is not necessarily "essential."

¶ 42    Defendants raise number of contentions concerning the health hazards posed by storing the mechanical equipment for Unit Two in their basement, including making reference to an inspection report prepared by an HVAC contractor. As discussed below in subsection C, however, this evidence was struck by the court and was not included anywhere else in the record filed on appeal. Accordingly, this information is not properly before this court. We therefore find that the record supports the circuit court's finding that plaintiffs established the elements necessary for an implied easement to place and access their mechanical equipment in the basement of Unit One subject to the time and place restrictions detailed in the court's order. For the same reasons, we find that the

circuit court did not err in entering a permanent injunction enjoining defendants from interfering with plaintiffs' placement of and access to the mechanical equipment in the basement.

¶ 43                                     C. Motion to Strike

¶ 44    Defendants next contend that the court erred in striking documents attached to their trial memorandum. As noted, before entering its judgment, the court asked the parties to submit trial memoranda on all issues. In the order setting the briefing schedule for the parties' memoranda, the court stated that the "parties stipulate that the existing evidentiary record is complete and will be the basis for final determination in the case." The defendants attached to their trial memorandum an affidavit from Lidia and an inspection report from Excelsior Enterprises, Inc., an HVAC contractor.

¶ 45    Plaintiffs filed a motion to strike portions of defendants' trial memorandum contending that the affidavit and the inspection report were not part of the evidentiary record as stipulated in the order setting the briefing schedule. Defendants responded that the information contained in the affidavit was not new evidence, but "was basically less than a summary of what [Lidia] testified to at the evidentiary hearing [on November 16, 2017]." Defendants further contended that the inspection report did not represent new evidence because it detailed health hazards caused by the placement of the mechanical equipment, which had been discussed throughout the course of the litigation. The trial court granted plaintiffs' motion and struck the affidavit and report.

¶ 46    On appeal, defendants make much the same argument that they did in the trial court. Defendants maintain that the affidavit and inspection report were not new evidence in contradiction to the stipulation in the order because they were presented at the evidentiary hearing on November 16, 2017.

¶ 47   As noted, however, although the record reflects that a hearing took place on November 16, 2017, concerning plaintiffs' claims for an easement and a preliminary injunction, there is no report of proceedings from that hearing date. We are therefore unable to ascertain whether the information in Lidia's affidavit and the inspection report is new evidence or not. It is well-settled that:

> "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

Here, because of the incomplete record, we resolve any doubts against defendants. We therefore presume that the trial court did not abuse its discretion in striking Lidia's affidavit and the inspection report because they constituted new evidence in violation of the parties' stipulation that the evidentiary record was complete. See *Jackson v. Graham*, 323 Ill. App. 3d 766, 773 (2001) (explaining that evidentiary rulings, including those on motions to strike affidavits, are generally reviewed for an abuse of discretion).

¶ 48                              D. Punitive Damages

¶ 49   Defendants next contend that the court erred in awarding punitive damages to plaintiffs. Defendants contend that plaintiffs never argued why they were entitled punitive damages and the court did not explain the awarded amount. Defendants assert that this case did not represent one of the categories of cases where punitive damages may be awarded.

¶ 50   In reviewing the award of punitive damages in a bench trial, this court considers:

"(1) Whether punitive damages are available as a matter of law for the cause of action. This step is reviewed *de novo*. [citation]

(2) Whether the facts prove willfulness or other aggravating factors. This factual finding is reviewed using a manifest-weight standard. [citation]

(3) Whether punitive damages should be awarded. This decision is reviewed using an abuse-of-discretion standard. [citation]

(4) The computation of the punitive damages award. The appellate court reviews this determination by looking at whether the amount was excessive ([citation]) or the result of passion, partiality, or corruption [citation]" *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1137-38 (2004).

We will address each of these elements in turn.

¶ 51    Here, the court awarded plaintiffs punitive damages on their claim for trespass to chattels. Plaintiffs claim for trespass to chattels was based on defendants' removal of their mechanical equipment from the basement leaving plaintiffs without heat, air conditioning, hot water, and electricity. Defendants contend that punitive damages are limited to only a select few causes of action and were not available as an award for plaintiffs' claim for trespass to chattels. However, trespass to chattels is a tort. See Restatement (Second) Of Torts, § 217 (1965). Punitive damages may be awarded for the commission of a tort when the underlying tort is accompanied by aggravating circumstances "such as wantonness, willfulness, malice, fraud, or oppression." *In re Estate of Hoellen*, 367 Ill. App. 3d 240, 253 (2006). Our supreme court has long-recognized that "[w]here a trespass is wilful [*sic*], punitive damages may be awarded." *Illinois & St. Louis R.R. & Coal Co. v. Ogle*, 92 Ill. 353, 359 (1879). Accordingly, we find that punitive damages were available in this case as a matter of law.

¶ 52    Next, the facts here unambiguously show willfulness or other aggravating factors. Specifically, the court found in its written order that defendants "committed the tort of trespass to Plaintiffs' property by reason of intentionally, willfully, and wrongfully removing Plaintiffs' Mechanicals from the Basement without legal or equitable justification, knowing that the Mechanicals were required for use and enjoyment of [Unit Two]." Defendants do not deny that they removed plaintiffs' mechanical equipment from the basement. After defendants removed the mechanical equipment, plaintiffs' condominium unit, where they lived with their children, was left without electricity, hot water, air conditioning, and heat. As such, we cannot say that the court's finding of willfulness was against the manifest weight of the evidence.

¶ 53    As to the final two factors, defendants contend that plaintiffs failed to make any argument explaining why they were entitled to punitive damages, and the court failed to make any findings detailing why punitive damages were appropriate in this case or in calculating the amount of the award. As noted, however, the record suggests that a hearing took place on November 4, 2019, before the court's entry of its judgment. Defendants assert that, at this hearing, the court heard argument from the parties' attorneys. We cannot determine from the record what sort of arguments plaintiffs' counsel may have made in support of an award of punitive damages, or what sort of oral findings the court may have made on the record concerning the award of punitive damages. As discussed, it was defendants' burden, as the appellants, to provide a sufficiently complete record of the proceedings at trial to support a claim of error. *Foutch*, 99 Ill. 2d at 391. In the absence of such a record, we presume that the order entered by the trial court was in conformity with the law and had a sufficient factual basis. *Id.* at 392. We resolve any doubts which may arise from the incompleteness of the record against the appellant. *Id.* Accordingly, we find no error based on the trial court's award of punitive damages.

¶ 54                                    E. Attorney Fees

¶ 55    Finally, defendants contend that the court erred in awarding plaintiffs attorney fees and costs. Defendants assert that, in Illinois, with the exception of specific statutes or agreements, each party is responsible for paying its own attorney fees. Defendants maintain that no such statute or agreement was present in this case. Defendants further contend that even if plaintiffs are entitled to recover attorney fees, plaintiffs' fee petition is deficient because it included costs and fees that are not recoverable under Illinois law.

¶ 56    We agree with defendants that under Illinois law, a trial court generally cannot award attorney fees to a party unless the fees are specifically authorized by statute or by contract between the parties. *Grate v. Grzetich*, 373 Ill. App. 3d 228, 231 (2007). An exception to this general rule exists, however, where the attorney fees are in essence an additional award of punitive damages where the defendant has acted in a willful, wanton, or malicious manner. *Glass v. Burkett*, 64 Ill. App. 3d 676, 683 (1978). "Wrongful conduct of the defendant, which has been characterized as being either [willful], wanton, malicious, or oppressive, is the root of all cases where litigation expenses have been allowed as an exception to the general rule that litigation expenses are not allowable to the successful party in the absence of a statute or in the absence of some agreement or stipulation specifically authorizing them." *Id.*

¶ 57    Here, as discussed above, the circuit court found in its written order that defendants "committed the tort of trespass to Plaintiffs' property by reason of intentionally, willfully, and wrongfully removing Plaintiffs' Mechanicals from the Basement without legal or equitable justification, knowing that the Mechanicals were required for use and enjoyment of [Unit Two]." The trial court's order shows that it intended to award plaintiffs attorney fees as an additional measure of punitive damages. The court specifically stated in its order that plaintiffs were entitled

to attorney fees and costs "as an additional award for punitive damages based on the court's finding that the defendant's intentionally removed the plaintiffs' mechanicals from the basement." The attorney fees awarded here were not a separate entity distinct from punitive damages. *Id.* at 683-84. Thus, where, as here, a finding of willfulness and intentionality accompanies an award of punitive damages, plaintiffs' attorney fees "may be taxable to defendants." *Anvil Investment Ltd. Partnership v. Thornhill Condominiums, Ltd.*, 85 Ill. App. 3d 1108, 1121 (1980).

¶ 58 Having found that a court may properly award attorney fees as an element of punitive damages where a defendant acted willfully, wantonly, and with malice, we must next determine whether the trial court's award of attorney fees in this case was appropriate. Defendants contend that the court should not have granted the fee petition largely because plaintiffs' attorney used "block billing." Defendants point to various examples of block billing throughout the fee petition, which they contend make it impossible for the court to determine the amount of time plaintiffs' attorney expended on a particular task, and whether such fee was reasonable.

¶ 59 Here, the record shows that defendants raised the same arguments in the trial court in their response to plaintiffs' attorney fee petition. Although the court did not hold an evidentiary hearing on the fee petition, the record shows that a hearing was held where the court heard argument from each parties' counsel. Following the hearing, the court entered an order granting plaintiffs' petition, but the court specifically excluded certain fees and costs that were identified by defendants in their response. For instance, defendants pointed out that two of the invoices attached to the petition were billed to George Ardelean, who was not a party to the case. In granting plaintiffs' petition, the court disallowed these amounts.

¶ 60 It is therefore reasonable for us conclude that defendants presented their same concerns regarding block billing and other ineligible costs to the trial court at the hearing and these matters

were addressed by the court. Again, we are left without a report of proceedings of this hearing, and we therefore presume that the trial court adequately considered and resolved the claims of error defendants now bring to our attention. *Foutch*, 99 Ill. 2d at 391-92. We resolve any doubts which may arise from the incompleteness of the record against defendants. *Id.* at 392. Accordingly, we find no error based on the trial court's award attorney fees.

¶ 61                                   III. CONCLUSION

¶ 62    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 63    Affirmed.